Attorney Hispan Good Morning Members I'm serving in the defendant's case representing the plaintiff's appellant Mr. Sam Collins. I'll start by introduction. Mr. Collins is a truck driver, was a truck driver for FedEx until February 4, 2020 when he was terminated, which is the basis of his claim. I'm here today on a motion to dismiss and the standard review for this is a de novo review and what the court, what the district court had ruled was that the claims were abandoned and I guess from a threshold perspective I need to address why I do not believe the claims were abandoned. In my brief, it was sparse in my objection to the motion of summary judgment. My opinion, my argument was that there was a material fact, known material fact, really that his motion to distermination was indisputable. The question as to whether or not Mr. Collins had abided by the rules going through the magnet meter and security at Newark Airport or whether in fact he was an aggressor and did not abide by the rules. It's FedEx's position that he was the aggressor and that he didn't abide by the rules. You've seen, I mean, we have seen that the, when it comes to unemployment, the Unemployment Commission disagreed with. But you didn't, you didn't raise the issue of the finding by the unemployment referee below, did you? I did, I briefed that, Your Honor. All right, normally a decision by an unemployment referee isn't binding on the court because the issue before the unemployment referee is different from the issues before the court. The unemployment referee didn't have to deal with any of the issues of discrimination, retaliation, hostile work environment, right? That is correct. I wasn't submitting that opinion for purposes of being precedent set in the case. What I was submitting it for was a view of the facts and that there was a dispute as to the material fact. So an objective body or an objective person is the Commissioner of the Administrative Agency and then we had in fact reviewed that video and came up with a different conclusion to the video than what was placed by the FedEx. And it's quite frankly the only reason we don't face the termination of my client. So that's in the state. But the ultimate issues in the case are whether the laws with respect to discrimination, retaliation, hostile work environment were violated in this case. I mean, the FedEx may well or could have been wrong in its decision to fire Collins. But if that decision wasn't based on an improper basis, it's not our role then to change it, right? I would agree with that. I guess I'm— And no. So the fact that the unemployment referee came up with a different decision as to who was the aggressor in the incident at security doesn't resolve any of the issues before us. The district court said, okay, you had abandoned the specific claims. But in any event, there are alternative bases for showing that none of the laws against discrimination and retaliation were violated in this case. So, Your Honor, I'm not submitting it for that purpose. I'm submitting it to get beyond the point of abandoning it, only for the purpose of abandoning my briefs. So Mr. Collins is representing counsel. And the standard is if, in fact, you issue—brief one issue and don't brief other issues, then you consider those issues abandoned. My point for this is that I didn't really brief any issues. I didn't think FedEx had met the prima facie case if it wasn't a material fact of dispute. Well, isn't it your burden as the plaintiff to present evidence to support a prima facie case? So—and I'm thinking particularly of discrimination and retaliation. So even if we concluded that there was a genuine dispute as to sort of who did what at the bumping incident and who was wrong and all of that, I don't know how that gets you a prima facie case as to discrimination on the basis of age or race or retaliatory motive being the reason for your client's termination. Well, I think then, once you get beyond the abandonment part, you get to—Mr. Collins has a sworn affidavit that says the CHRL was just facts, right? That showed that he was, one, created that there was hostile and aggressive work environment that he was in, and that the supervisors failed to correct it, number one. And number two, then they also, quite frankly, enlarged it, taking action against him. So other than the termination, what acts are documented in the record within the limitations period that we're looking at? So the limitations period, right, I guess depends on what you consider to be a continuing violation. Correct. So let's assume you're making a continuing violations argument. You still need one act that's part of the course of harassment that's within the period. What is that one act? Well, I'm arguing the act of termination itself. Okay. Is there anything other than the termination itself? No. So now going backward, right, from the termination, I would have him sit every day, and by then telling him—by then telling Mr. Collins to not speak to him again—Mr. Collins is a truck driver. He drives a truck trailer. He made a complaint against his co-employee. His supervisor told him, as part of a resolution of this complaint, was that he could not speak to the mechanic. Any issue he had with his vehicle, he had to go to someone else. He was forbidden from doing that. Additionally, he was told when there was a complaint about the way Mr. Dickey was developed, was parking his vehicle. He raised that complaint. That was safe. He then went to try and find ways around the parking regulations that were in place at that facility in that area. And so—and then they went and they disciplined him, or at least talked to him and counseled him about parking his vehicle, parking the truck, in front of the bay doors. It was an undated picture. There was no—he denied it. He parked there during the time frame after he was told not to park there. And yet they still disciplined him about it. So I would say those events kind of would get me back to the 2017-18 period of time when he filed his complaints. So he filed—so, obviously, there were debarrable complaints in 2011 against Mr. Dickey, right? They then had—where he did not believe that was addressed appropriately, in 2017, he went—Mr. Collins went and filed formal complaints through the FedEx policies. All three, probably. He used all three policies that FedEx maintains, and then to the human resources department. He didn't believe that they were responding to him or taking him seriously. He actually called the CEO of Gerber. And finally, after that happened, they issued a decision in January, the time frame of 2018. So now, we're in 2018. A year later, you have the incident when one day, at that point, they tell him not to speak with Mr. Duvall. Again, he didn't care. He's a nighttime driver. So you have him tell him not to speak with Mr. Duvall. And then you have an event where there's definitely different opinions as to what transpired at that event, as a catalyst for the only event that they have against him, and they use that to terminate him. So I do believe you have a continuing violation. Was he—I'm curious when you say the only thing they had against him was—was this an at-will position? Or I realize that's not—there's not a wrongful termination claim, but I'm curious whether this was an at-will position or a for-cause position under the FedEx rules. Your Honor, it's an at-will position. He's not a member of our committee. That's correct. It does not have a contract. We're not alleging there's a contract in place. So they didn't— It's a just-cause position. Okay. So they didn't need a reason—it wasn't like they needed a reason to let him go. Correct. A good reason, bad reason, no reason. No reason at all. They can't have a legal reason. And it's our position, it's our opinion that this was the only thing he had done, and they had to kind of chase the facts and, quite frankly, did it because of all retaliation, too. The way they feel their policies show some form of treating him differently than they treated a Caucasian employee. So that's our— He was replaced by someone in the same racial and age group as he was. Is that right? He was, but, one, I don't think it happened within the time frame that the law has for a period of time when you replace somebody for consideration as to whether or not that's a factor, number one. Number two— Well, he wasn't replaced by someone not in the protected class. That is correct. But, again, I would argue that that's not really relevant to the way they treat him, whether the employer was aiding or abetting him into his, you know, the conduct that was happening. So, I mean, I guess— Well, let me just explore that a second, because the claim here isn't they wrongly accused him of misbehavior at the security checkpoint, right? That's an argument that sort of folds into your case, I suppose, as you're presenting it. But the claim here is that he was terminated on the basis of his race. Correct. So wouldn't the race and age, I guess, wouldn't the race and age of his replacement be relevant to that? I guess my understanding is that when, based off of the time frame of the hiring, that whether you use that as a basis, whether you use that as a defense, then this is beyond that period of time. Oh, I see. So if it— We're not breaking that issue, Your Honor. Okay, well, we're doing it. But again, I think that if you look at the way they handled Mr. Collins versus the way they handled allegations against Mr. Collins and Mrs. Cody and others, they just treated him differently, and that, I believe, is based off of race and age. Okay, we've kept you a little longer than your time, but I know you have two minutes of rebuttal, so why don't we hear from your colleague, and then we'll hear back from you again on rebuttal. Thank you, Your Honor. Good morning, Vanquish the Court. My name is Daniel French. I represent Ms. Ellen Ellis of Spruance, Missoula. First, I thank the Court. Thank you very much. The Court continued the other setting, which helped me with my trip to the other one plan, so I appreciate you doing that. I just want to say, you know, part of the confusion in this case is a lot of things are said that are not supported or not in the record, which is why the Court may have been finding in the first place. And so I do want to say, I want to pick up right on what Mr. Gibson said and what Judge Gibson's question was about, what were any acts between November of 2017 up until his termination in February of 2020, which would constitute or allow for a finding of a continued violation of House Law and Court of Arbitration? And there are. Mr. Gibson's claim that, you know, he was instructed not to speak to Mr. Novella. Well, as the Court has probably seen through this extensive record, Mr. Novella and Mr. Collins, no doubt, did not like each other. Both filed harassment claims against each other through FedEx internal processes. Both were fighting over where they were parking their cars, who should be parking their trucks. And obviously, there was this incident that occurred way back in 2011 where Mr. Collins and Mr. Novella got into it, which ultimately resolved itself with an apology and Mr. Collins, in fact, testifying that, you know, as a Christian, he forgave Mr. Novella and didn't want to pursue a formal complaint through FedEx's processes at that point. This assertion that a hostile FedEx instructed Mr. Collins not to interact with Novella, somehow that constitutes severe or pervasive harassment, you know, constituting a continued violation, is not supported by the case law, and it's been raised for the first time in this appeal, which sort of puts us at a disadvantage of showing what Mr. Novella was instructed, which he was instructed to say to Mr. Collins, and it is just haphazardly untrue that Mr. Novella was the only mechanic that Mr. Collins had to deal with. That is not true. And that, in fact, can be rebutted by the record by the fact that there was another mechanic, Dave Reno, who also accused Mr. Collins of inappropriate behavior towards Mr. Novella as part of this whole situation. Now, you know, ultimately, at the summary judgment stage, the only response to FedEx's arguments was to point to the unemployment report's decision about whether he engaged in vulnerable misconduct, and also raising simply that FedEx did not formally investigate a 2011 incident in which Mr. Novella called Mr. Collins a boy during the murder. Those were the only two assertions brought by the team in response. I don't think he called him a boy. He called him boy. Well, according to the investigation done by Mr. Colasso, Mr. Novella maintained that he said you're acting like a little kid. Okay, but that's not the gloss on the facts that we're taking for purpose of summary judgment. Sure, I understand that. I'm just, I'm sorry, you're right. So he alleges that Mr. Novella called him a boy, and when Mr. Colasso addressed it, Mr. Novella apologized. At that point, Mr. Collins chose not to pursue any further action to defend his policy. So those are the only two issues that were raised in response to our summary judgment arguments. On appeal, I would submit that really the only argument that Felton has raised is the hostile work environment. In his brief, his initial brief, he does not address at all the basis for the court's findings on the discrimination and the retaliation claims, or even the aiding and abetting under the Connecticut Fair Employment Practices Act. Those came later in the reply brief where he picked up on some of our arguments in which the court could consider, obviously, to go low, what the court said to go low. But we would ask this court to affirm the lower court's ruling with regards to abandonment and finding that on the merits that claim, there is no genuine issue of material facts as to any of these claims. I did want to note, because obviously in the reply brief, there were some things that were raised that we didn't get to respond to. There was one, I will note that in the reply brief on page two, Planov admits that he's not contesting abandonment claim by not addressing our arguments in response to this check. That's on page two. He also admits in page five of his reply brief that he failed to cite a record or to any of the missing evidence in responding to FedEx's undisputed material facts in responding to the motion for summary judgment. And I also wanted to address this assertion, which is not true. In the reply brief, Planov has asserted that FedEx failed to turn over a final investigative report, claiming attorney behind the records. That is absolutely false. We, from the beginning of this case, turned over all documents at the initial disclosure stage and with supplemental disclosures. I went back through the records to verify that this was true. Planov never sent us interrogatories, never sent us requests for productions of documents, never sent us requests for submissions. We turned over all relevant documents as though we had. And that investigative report, Planov is now claiming in the reply that somehow we argued it was privileged, we refused to turn it over. It goes into this assertion that, oh, well, you know, I was going to request it in camera, but I decided not to. I have no idea what they're talking about. That report was a deposition exhibit, Mr. Collins' deposition, which was the only deposition taken in the case. And I hope appellate counsel will clarify that now, the record. I just wanted the court to be aware that, you know, we took great strides to make sure in this case that all documents were turned over, as I've seen in her case. And I just want to say that. Where are the documents kept? Where are the documents kept, Your Honor? They're kept just in our systems? The one you are talking about, the documents you are talking about. Oh, the documents are kept in our systems. We turn them over. Where, where? Geographically, where are they? Geographically? All of them are part of the record in this case, because we cited two of them. They are undisputed material safety facts. They've been added as dependents. I'm just curious if they have a geographical location where it is. Well, they are located, I guess, the hub of our systems are at Cerro Bar, out in Colorado, but then we also have systems in Memphis. But we transmitted all the documents through USB drive, and then used physical hard copies of those documents. And Mr. Collins' deposition provided him with copies of those, of those exhibits. Hard copies. I'm curious, you said that the, this investigative report was an exhibit to the deposition of Mr. Collins, is that right? Is that, is that, did that make its way into the appendix? It actually did. It was, it was deposition exhibit 30. And I believe it was, it was, and then it was a motion for summary judgment exhibit to our safety facts. And I can, I can look up that information if you want to. That's all right. I don't want to take your, your, your time. Yes, it was attached to our undisputed material safety facts that the court considered and reviewed. There were no documents that were held for plaintiff due recourse to this at all. And no requests were ever made by plaintiffs for any documents that we didn't provide. So I did just want to clarify that issue. If the court has any additional questions, I'm happy to answer them. Thank you. So Mr. Hibson, you've, you've made sort of an allegation, your reply brief, and counsel has said it's false. Do you want to offer any explanation or? Yeah, it might have stated, it might, I don't have that with me. For me, that wasn't something I was going to argue today. And I will go back to the record and I will follow up with a, with a letter to the court or whatever documents necessary to the court explaining what I, what I based that off of and the document on the roof. Um, that was, um, in the mandatory exposure, I believe there was an exemption not claimed for that and that's how I was basing that off of. So I will make sure that I find that or I will also let the court know that I was receiving that, correct? So, um, but I will do that in a week. Thank you. Um, one thing I wanted to address was the, the aiding and abetting claim. Um, our aiding and abetting claim is that the employers, the employer, that actually is directly liable by the virtue of their, um, supervisors. So you're not, that's not really aiding and abetting then, that's just, that's just vicarious liability.  It's not a separate count, it's just. I mean, I call it aiding and abetting because that's the way it was addressed in the, um, non-random decision of the district court. But I agree that it was, our action is against FedEx. Right. We believe that their supervisors are the ones taking the action. It's not against the, not specifically against Novella, Cody, or any other cohort. It's just really the actions of the, of the employer or the supervisors that really drove the claim. Quite frankly, failed to protect, um, Mr. Collins from those closures. And quite honestly, in our opinion, exacerbated those, those actions. That's why, um, so I, I believe that's briefed. I believe, um, number two, starting on page 28 of my brief. So I, I disagree that it wasn't addressed in the brief. It was only touched in the, um, in the reply to the meeting. But it sounds like you're conceding that you, you really don't need the aiding and abetting claim because it, it, that's a distinct, aiding and abetting would mean you're suing the supervisors because they aided and abetted FedEx, but you're suing FedEx directly. Correct. I believe FedEx is directly liable based off of the actions of supervisors. Right. And that's always true, right? Employers always act through, yeah. Before you finish, you mentioned your desire to submit additional documents, uh, to the court. I would think, first of all, I'd like the president to decide whether you may do that. And if the answer is yes, can we please set the, uh, if the, if the answer is yes, can we please, you said by the end of the week, can we say by the end of the week? Yeah, no, just to be clear, this is not additional documents. This is a, a very targeted response, uh, something that felt almost like an allegation was made. We've heard a contention that it was false. And so either we will get a one-liner withdrawing it, um, or we'll get a next, we'll get a citation to the record that shows us that, that it's supported. I'm not looking to submit the record, I'm looking to verify what I, what I admitted. Meaning it's there already and you're going to identify it. Well, in that case, I still think we should do it by the end of the week. Yeah, no, I, I, I was going to wrap up with the, with the deadline. I know that, that, that makes a lot of sense. Okay, well, that's, that's why we'll give you until Friday, um, by the close of business and otherwise we'll assume that, that you've withdrawn that. Thank you. Appreciate it. Thank you both. I think that, uh, concludes today's arguments, uh, and, um, we'll take it under advisement and